## S06A0586. SCOTT v. THE STATE.

(629 SE2d 211)

MELTON, Justice.

Following her convictions for malice murder, felony murder, and armed robbery, Starsha A. Scott appeals, contending that the evidence was insufficient to support the verdict and that the State improperly used its peremptory strikes against two jurors.[1] We affirm.

Viewed in the light most favorable to the verdict, the record shows that Scott and her cousin, Melvin Cooper, shared a bedroom in the apartment of Scott's mother. On the morning of May 10, 2000, Cooper woke Scott and told her that he was going to rob a nearby gas station. Cooper asked Scott to accompany him, and Scott agreed to "stand over" the scene. Scott and Cooper were seen leaving their apartment building that morning in big, heavy clothing not needed in the warm weather. Scott followed Cooper to the back of a nearby gas station, and, on the walk there, Scott observed that Cooper was carrying both a canister of mace and a gun. While inside the gas station, Cooper shot and killed the store clerk and stole his credit cards. Scott was close enough to the scene to hear the gunshot and observe the parking lot. Following the shooting, Cooper discarded the heavy clothes he had been wearing in the woods behind the store, and Scott discarded her jacket as well. As soon as they returned to their apartment, Cooper and Scott began using the store clerk's credit cards to buy groceries, clothing, haircuts, pizza, and gifts for their friends. The stolen credit cards, the victim's wallet, and the likely murder weapon were found in the apartment, and a number of the items were discovered in the bedroom which Scott and Cooper shared.

This evidence was sufficient to enable a rational trier of fact to find Scott guilty of the crimes with which she was charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Scott argues that this evidence was insufficient to support the verdict because the State failed to show that she was a party to the crime committed by Cooper. "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). Criminal intent may be inferred from conduct before, during, and after a crime in question. *Joyner v. State*, 280 Ga. 37 (1) (622 SE2d 319) (2005).

---

[1] On December 15, 2000, Scott was indicted for the armed robbery, murder, and felony murder of Ejaz Rana. A jury found Scott guilty of all charges on December 17, 2002, and, the same day, she was sentenced to life imprisonment for murder and fifteen years, concurrent, for armed robbery. Scott filed a motion for new trial on October 9, 2002 and an amended motion for new trial on May 16, 2005, which was denied on July 20, 2005. Her timely appeal was docketed in this court on December 7, 2005 and submitted for decision on the briefs.

Knowing that Cooper was going to commit a robbery, Scott voluntarily accompanied him, saw that Cooper was carrying a gun, agreed to "stand over" the scene for him, and joined him in using the victim's credit cards following the murder. And, although Scott stated that she only accompanied Cooper because he threatened to tell her brother that she had hickeys, other testimony indicated that she was not generally intimidated by Cooper. Based on this evidence, the jury was authorized to conclude beyond a reasonable doubt that Scott was guilty as a party to the crimes with which she was charged. *Jackson v. Virginia*, supra; *Odom v. State*, 279 Ga. 599 (619 SE2d 636) (2005).

2. Scott contends that the trial court erred in its finding that the State had not improperly used its peremptory strikes against two African-American potential jurors, thereby violating *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). To prove a *Batson* violation, a defendant must show that the State engaged in purposeful racial discrimination through its use of peremptory strikes. On appeal, a trial court's finding that there was no violation of *Batson* is entitled to great deference. *Floyd v. State*, 272 Ga. 65 (3) (525 SE2d 683) (2000). Once a party raising a *Batson* challenge satisfies his or her burden of showing a prima facie case of racial discrimination, the reasons provided to overcome any presumption of racial discrimination must be "concrete, tangible, race-neutral, and neutrally applied." *Ford v. State*, 262 Ga. 558, 560 (3) (423 SE2d 245) (1992). See also *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995).

With regard to the first potential juror, the State struck her from the jury panel because she had indicated that defendants are sometimes required to prove their innocence. The State explained that, due to this notion, the potential juror might be "favorably disposed toward the defendant because they view it's unfair, whether she's black or white." With regard to the second potential juror, the State argued that it struck her from the jury because she was either non-responsive to the State's questions, or she would say one thing and then immediately contradict herself. In addition, the second juror also stated that she felt that a criminal offense which required a two-year jail term was a "small thing." The State argued that it struck her from the jury because this answer "reflects a callousness either for the law or the sentence or both." In addition, many of her answers to questions simply could not be comprehended. In both of these cases, the State provided a concrete race-neutral reason for striking the jurors in question. *Lingo v. State*, 263 Ga. 664 (437 SE2d 463) (1993).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 25, 2006.

*John R. Greco*, for appellant.
*Patrick H. Head, District Attorney, Ann B. Harris, Dana J. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General*, for appellee.